## WOLFINGER v. THOMAS, et al.

Rev. Code Civ. Proc. §§ 146, 147, 150, provide that no variance between a pleading and the proof shall be material unless it has misled the adverse party to his prejudice, etc., and authorize the court to allow amendments which do not change the claim or defense, by conforming the pleading to the facts. A complaint demanded the rescission of a contract and the recovery of the consideration paid, on the ground of fraudulent representations. Held, that the allowance of an amendment demanding the same relief on the ground of mutual mistake, to conform to the evidence, was proper.

Where, in an action by a purchaser to rescind a contract and recover the consideration paid thereon, there was no claim by the vendor for the use of the land by the purchaser, nor any evidence of the value thereof, or that the purchaser used the land or rented the same, did not err in not finding the value of the use of the land during the time intervening between the transfer of the same by the vendor to the purchaser and the trial.

A verdict on conflicting evidence, and not contrary to the preponderance of the evidence will not be disturbed on appeal.

Rev. Civ. Code, § 2347, provides that rescission cannot be adjudged for mistake when the defendant can be restored to substantially the same condition as before the contract was made. A pur-

chaser sued to rescind the contract and recover the consideration consisting of a cash payment and a horse. The court required the vendor to repay the cash and the value of the horse, which the vendor has disposed of. **Held,** that the parties were substantially restored to the conditions occupied by them before the contract authorizing rescission.

In a suit to rescind a contract and recover the consideration paid on the ground of mutual mistake, it was proper to allow interest on the cash consideration paid from the time of payment to the time of the trial.

In a suit by a purchaser to rescind the contract and recover the consideration paid, the court, in granting the relief prayed for, may, in the exercise of its equity powers, make the judgment for the repayment of the consideration a lien on the premises.

In an action by a purchaser to rescind the contract and recover the consideration, consisting of a cash payment and a horse, it appeared that the horse was sold by the vendor soon after he received it from the purchaser, and there was no evidence that he received anything for the use of the horse during that time. **Held,** that the court erred in finding the value of the use of the horse from the time of its transfer to the vendor to the time of the trial as a part of the purchaser's recovery.

(Opinion filed, February 5, 1908.)

Appealed from Circuit Court, Aurora County. Hon. FRANK B. SMITH, Judge.

Action by C. F. Wolfinger against Harley Thomas and another. From a judgment for plaintiff, defendants appeal. Modified and affirmed.

*Preston & Hannett,* for appellants. *P. A. Zollman,* for respondent.

CORSON, J. This action was instituted by the plaintiff to rescind an executed contract for the sale of a certain quarter section of land in Brule county, entered into by him with the defendant, on the ground of fraudulent representations by the defendant in inducing the plaintiff to enter into the same. Plaintiff alleges in his complaint, in substance, that the contract was made and entered into on the 10th day of April, 1905, by the terms of which it was provided that said Thomas did that day sell to the plaintiff the southeast quarter of section 30, township 105, range 67, in Brule county, at the agreed price of $2,600, and for which the plaintiff agreed to pay the sum of $1,100 in cash and a stallion valued at $1,500; that the plaintiff paid said defendant the sum of $1,100, and delivered to him the stallion described in the contract; that the plaintiff was induced to enter into said contract by the fraudulent representations of the defendant upon which he relied; that the said fraudulent representations consisted of the pointing out by the defendant through

his agent to the plaintiff of a different and more valuable quarter section of land as the one to be conveyed instead of the quarter section of much less value actually conveyed to the plaintiff by the defendant; that the plaintiff, prior to the commencement of the action, and immediately upon the discovery of said fraud, notified the defendant that he rescinded said contract, and offered to reconvey to him the premises conveyed to him under the terms of said contract upon the payment to him of the sum of $1,100, with interest and the return of said stallion, and the plaintiff demanded judgment that the said contract be rescinded by order of the court and delivered up and canceled, and for the recovery of the stallion described in said contract, and, in case the same could not be delivered, for $1,500, the agreed value of the same in the contract. The defendant by his answer admitted that the defendant conveyed to the plaintiff the land described in said contract, and that the plaintiff paid the defendant the agreed price therefor, and denied all the other allegations of the complaint. On the trial of the the case, after the plaintiff and defendant had rested, the court, upon its own motion, against the objection of the defendant, allowed the plaintiff to amend his complaint, alleging the cause of action founded on mutual mistake instead of fraudulent representations on the part of the defendant as alleged in the original complaint; the original answer being allowed to stand as the answer to the amended complaint. It appears from the evidence that the plaintiff failed to prove any fraudulent representations on the part of the defendant or his agent; but the evidence clearly establishes the fact that there was a mutual mistake on the part of the plaintiff and defendant. The court in its findings finds that there was a mutual mistake between the parties in entering into the contract, and concludes that the plaintiff is entitled to a rescission of the contract; that he was entitled to recover $1,100 and interest from June 5, 1905, at the rate of 7 per cent. per annum, and was entitled to recover the possession of the stallion described in the contract, together with the value of the use of the same from April 14, 1905, and, in case the stallion could not be delivered, then he was entitled to recover $800 the value of the same, and interest at 7 per cent. from April 14, 1905; and that the plaintiff was entitled to a lien on the quarter section described in the contract for the satisfaction of said judgment; and judgment was thereupon entered accordingly.

It is contended by the defendant that the court, in permitting the plaintiff to amend his complaint at the trial by changing it from an action to rescind the contract on the ground of fraudulent representations on the part of the defendant to an action to rescind the contract on the ground of mutual mistake of the parties, com-

mitted error, as such an amendment at the trial is not permissible under the provisions of our Code authorizing amendments to pleadings at the trial, for the reason that the amendment substantially changed the claim of the plaintiff from that originally claimed in his complaint of fraudulent representations on the part of the defendant to that of mutual mistake by the parties.   The amendment was ordered by the court, evidently for the purpose of conforming the pleadings to the proof in this action, and the principal question presented by this court for its consideration is, was the court authorized under the provisions of our Code to permit this amendment?   Section 150, Rev. Code. Civ. Proc., provides that "the court may, before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, process, or proceeding by adding or striking out the name of any party, or by correcting a mistake in the name of a party or a mistake in any other respect; or by inserting other allegations material to the case, or when the amendment does not change substantially the claim or defense by conforming the pleading or proceeding to the facts proved, or by facts in support of which proof is offered. * * *"   It will be observed that this section of the Code is broad and comprehensive, and authorizes the court on the trial or subsequently thereto to permit the pleadings to be amended to conform to the facts proven when the amendment "does not change substantially the claim or defense."   This section of our Code is substantially the same as those found in the Codes of most of the Code states.   The courts of those states have generally given to the section a very liberal construction in order to prevent a failure of justice and the dismissal of actions on the ground of variance between the allegations of the complaint and the evidence given on the trial in order that litigation between the parties may as far as practicable be disposed of in one action instead of encouraging a multiplicity of actions.   The primary object of the plaintiff in the case at bar was the rescinding of the contract which he had entered into, and to recover from the defendant the consideration paid under the terms of said contract.

The claim of the plaintiff in the broad sense of the term was not intended to be and was not in fact changed, either as regards form or the general scope of the controversy involved, other than the elimination therefrom of the fraudulent representation on the part of the defendant and the substitution therefor of mutual mistake of the parties.   The amendment worked no change in the form of the action as to its being legal or equitable, nor changed the nature of the recovery necessary to vindicate the plaintiff's rights.   In the original complaint the plaintiff sought to rescind the contract and recover back the consideration paid thereunder, and in the latter he sought to obtain the same relief on the ground of

mutual mistake of the parties, and to close up the matter in controversy which led to the litigation. The result was the elimination of the fraudulent representations and the substitution in its place of the mutual mistake of the parties, in either case the rescission of the contract and the recovery of the consideration paid thereunder were the real objects of the controversy. The contention of the appellant, therefore, that the amendment effected a change in the plaintiff's claim contrary to the provision of the Code, is untenable.

We are of the opinion that there is ample authority conferred upon the trial court by the section above referred to to allow the amendment complained of. All the facts in the case were before the court, and the only limitation upon the power of the court is that the amendment should be in furtherance of justice and upon such terms as might be proper. Clearly such an amendment was in furtherance of justice. To have dismissed the action on account of variance between the proof and the allegations of the original complaint would have been in contravention of section 146 of the Revised Code of Civil Procedure, which provides as follows: "No variance between the allegation in a pleading and the proof shall be deemed material, unless it has actually misled the adverse party to his prejudice, in maintaining his action or defense, upon the merits. Whenever it shall be alleged that a party has been misled, the fact shall be proved to the satisfaction of the court, and in what respect he has been misled; and thereupon the court may order the pleading to be amended, upon such terms as shall be just"—and section 147 which provides: "Where the variance is not material as provided in the last section, the court may direct the fact to be found according to the evidence, or may order an immediate amendment without costs." By reading section 150, above quoted, in connection with the two sections last quoted, it is clear that the lawmaking power intended to abrogate the technical rules existing under the common law system of pleading, and to substitute therefor a system better calculated to conform and further the ends of justice and to prevent a multiplicity of actions. The courts of the Code states in construing similar sections of their Codes have given to the same a very broad and liberal construction in order to carry into effect the evident object and purpose of the lawmaking power in the enactment of the new and reformed Code of Civil Procedure. Hopf v. United States Baking Co., 21 N. Y. Supp. 589; Post v. Campbell, 110 Wis. 378, 85 N. W. 1032; Gates v. Paul, 117 Wis. 170, 94 N. W. 55; Anderson v. Bank, 5 N. D. 80, 64 N. W. 114; Cook v. Croisan, 25 Or. 475, 36 Pac. 532; Culp v. Steere, 47 Kan. 746, 28 Pac. 987; Halloran v. Holmes, 13 N. D. 411, 101 N. W. 310. In Hopf v. United States Baking Co., supra, a very recent case, this subject is very fully discussed,

and the conclusion reached that the power of amendment may be exercised in a proper case to the extent of changing entirely the cause of action so long as the real controversy between the parties is not fully departed from. What is meant by the word "claim" is very fully considered by the Supreme Court of Wisconsin in Post v. Campbell supra, under a section identically the same as section 150 of our Code, above quoted, and that court says that the section "has had judicial construction many times to the effect that the limit of the power of amendment is only exceeded by a departure from the subject of the action." This subjct was again very fully considered by the court in the case of Gates v. Paul, supra, in which it was held that it was competent for the court in an action brought to wind up a partnership and to declare the plaintiff entitled to certain interest in real property, to allow the plaintiff to amend his complaint by eliminating therefrom the allegations of partnership and inserting in lieu thereof allegations that the defendant held the property in trust for the plaintiff, and the court in its opinion said: "It was in equity originally, and remained so, notwithstanding the amendment; that neither worked a change in the form of the action as regards whether legal or equitable, nor materially changed the nature of the recovery necessary to vindicate the plaintiff's rights. At first, under a certain state of facts, respondent sought to recover as a wronged partner a specified interest in property, and to terminate his relations to the defendant in respect thereto. In the end he sought to obtain the same relief as regards property rights, and to close up the identical subject-matter of controversy which led to the litigation and was the sole ground thereof, by substituting as the primary purpose of the suit the establishment of relations of trustee and cesti que trust between him and appellant, and the winding up of such relations for that of partnership relations and the winding up thereof. The result was to drop out the primary matter, the subject of establishing a partnership contract and a dissolution thereof, and substitute in its place the establishment of a trust in land and a termination of the trust. In either case the situation of the real estate and the recovery of an interest therein by the plaintiff was the real substance of the controversy." We do not deem it necessary to extend this opinion by further quotations from the authorities, as it is quite clear from an examination of the same that the trial court in the case at bar was fully authorized to permit the plaintiff to amend his complaint in the manner above stated. We have examined the cases of McMichael v. Kilmer, , 76 N. Y. 36, and Dudley v. Scranton, 57 N. Y. 424, relied on by appellant in

support of his contention, and in our opinion they are not in point, as in neither of these cases was the question of amendment of the pleadings involved.

It is contended by counsel for the defendant that the court erred in not finding the value of the use of the land during the time intervening between the transfer of the same by the defendant to the plaintiff and the trial of the action; but it is sufficient answer to this contention that there was no claim made on the part of the defendant for the use or occupation of the land, no evidence introduced on the trial showing its value, and no evidence that the plaintiff ever used the land or rented the same, and, in fact, it was disclosed by the evidence that the plaintiff, as soon as he discovered the mistake as to the land conveyed him, gave notice to the defendant of his intention to rescind the contract.

It is further contended that the court erred in its fourth finding of fact, wherein it finds that the value of the stallion at the time of its delivery to the defendant was $800, and in finding that the value of the use of the same from April 14, 1905, to the time of trial was $200. As we have seen by the terms of the contract, the value of the stallion was fixed at $1,500; but the court declined to find for the plaintiff the value of the stallion as fixed in the contract, but permitted evidence to be introduced of its actual value, and upon the evidence so introduced the court found the value to be $800, as stated in its findings. It appears from the evidence that soon after the transfer of the horse to the defendant he sold the same, but for what price does not appear, and the evidence upon the subject of the value of the horse was conflicting, and, upon a review of this evidence, we cannot say that there was a preponderance of the same against the findings of the court.

It is further contended by counsel for defendant that as the horse had been disposed of the defendant could not be restored to the same condition as provided by section 2354, Rev. Civ. Code, which reads as follows: "Rescission cannot be adjudged for mere mistake, unless the party against whom it is adjudged can be restored to substantially the same condition as if the contract had not been made"—and that therefore the court was in error in allowing the rescission of the contract; but we cannot agree with counsel in their contention. The court, by requiring the defendant to repay to the plaintiff the $1,100, with interest, and to pay to the plaintiff the value of the horse, as found by the court, placed him in substantially the same condition as before the contract was made.

If the contention of counsel should be sustained, it would practically prevent the rescission of contracts where any part of the consideration received on account of the contract had been disposed of by the defendant. All that is required in such a case is that the defendant be substantially restored to the same conditions as before the contract, and this, in our opinion, was done in this case.

It is further contended that the court erred in allowing interest on the $1,100 from the time it was paid to the defendant by the plaintiff to the time of the trial; but we are clearly of the opinion that the court committed no error in allowing the leagl rate of interest upon the money so paid.

It is further contended by counsel for the defendant that the court erred in deciding that the plainiff was entitled to a lien upon the land to secure the sums of money that the court found should be paid to the plaintiff, as there was no evidence before the court that the defendant was insolvent. This contention is clearly untenable, as the court had acquired jurisdiction of the subject-matter; and the case comes within the spirit of the rule that, when the equity power of the court has been once brought into action, the the active jurisdiction of the court will be continued until full justice has been done between the parties. Probert v. McDonald, 2 S. D. 495, 51 N. W. 212; Brace v. Doble, 3 S. D. 110, 52 N. W. 586. It was clearly competent, therefore, for the court, in the exercise of its equity powers, to make the judgment of the court a lien upon the property until the same should be satisfied.

It is further contended by counsel for defendant that the court erred in fiinding the value of the use of the horse from the time of its transfer to the defendant up to the time of the trial was $200, as there was no competent evidence of the value of such use during that time. We are of the opinion that counsel is right in this contention, as it appears from the undisputed evidence that the horse was sold by the defendan soon after it was turned over to him by the plaintiff, and there was no evidence that the defendant received anything for the use of the horse during that time. This being so, it is quite clear that the finding of the court that he value of the use of the horse was $200 is not supported by the evidence. In our opinion, therefore, the judgment should be modified by striking therefrom the sair sum of $200, so found to be the value of the use of the horse by the court; and the judgment as so modified is affirmed. Because of the modifications, appellants will be allowed one-half of their taxable costs and disbursements.